IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

RONALD DALE EDWARDS,    )
                         )
        Plaintiff,    )
                         )
    vs.           )        5:18-cv-00560-LSC
                         )
ANDREW SAUL,    )
Commissioner of    )
Social Security,    )
                         )
        Defendant.    )

## MEMORANDUM OF OPINION

## I.    Introduction

The plaintiff, Ronald Dale Edwards, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for a period of disability and Social Security Disability Insurance Benefits ("DIB"). Mr. Edwards timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Edwards was 43 years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has an eighth-grade education. (Tr. at 196.) His past work experiences include employment as grain clerk and hand packager. (Tr. at 61,

196). Mr. Edwards claims that he became disabled on April 8, 2014, after back surgery. (Tr. at 55). He alleges that he is totally disabled due to a back injury, depression, spinal stenosis, arthritis, bursitis, facet damage, leg and hip pain, and numbness. (Tr. at 195).

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision

depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Mr. Edwards meets the nondisability requirements for a period of disability and DIB and was insured through the date of the decision. (Tr. at 12.) The ALJ further determined that Mr. Edwards has not engaged in SGA since the alleged onset of his disability. (*Id.*) According to the ALJ, Plaintiff's dysfunction of major joints and degenerative disc disease of the spine are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, the ALJ found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 14.) The ALJ did not find Mr. Edwards's allegations to be totally credible, and the ALJ determined that he has the following RFC: "light work . . . except he could occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; he should

avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, and vibration; and he should avoid all exposure to workplace hazards." (Tr. at 15.)

According to the ALJ, Mr. Edwards is unable to perform any of his past relevant work, he is a "younger individual age 18-49," and he has a "limited education," as those terms are defined by the regulations. (Tr. at 18). The ALJ determined that "transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled." (*Id.*) Because Plaintiff cannot perform the full range of light work, the ALJ enlisted a vocational expert ("VE") and used Medical-Vocation Rule 202.17 as a guideline for finding that there are a significant number of jobs in the national economy that he is capable of performing, such as assembler, mail clerk, and product marker. (Tr. at 19). The ALJ concluded the findings by stating that Plaintiff "has not been under a 'disability,' as defined in the Social Security Act, from April 8, 2014, through the date of this decision." (*Id.*)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v.*

*Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d

622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.    Discussion

One of Mr. Edwards's arguments in support of reversal and remand is that with regard to his physical impairments, the only medical opinion to which the ALJ assigned great weight was of the State agency medical expert who never personally examined Mr. Edwards and who did not have the full record at the time of his assessment. This Court agrees that, based on this particular record, this case must be reversed and remanded on that ground. Further, for the reasons stated herein, on remand, the ALJ should reassess all of the medical opinions in the record.

### A.    Applicable Standards Regarding Physicians' Opinions

The ALJ must articulate the weight given to different medical opinions in the record and the reasons therefore. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The weight afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the

opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

Within the classification of acceptable medical sources are the following different types of sources that are entitled to different weights of opinion: 1) a treating source, which is defined in the regulations as " your physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you;" 2) a non-treating source, or a consulting physician, which is defined as "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have an ongoing treatment relationship with you;" and 3) a non-examining source, which is a "physician, psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case . . . Includ[ing] State agency medical and psychological consultants. . ." 20 C.F.R. § 404.1502.

The regulations and case law generally prefer treating medical sources' opinions over those of non-treating medical sources, and non-treating sources over non-examining medical sources. *See* 20 C.F.R. § 404.1527(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). As such, the opinions of one-time examiners are not entitled to any special deference or consideration. *See* 20 C.F.R. §§ 404.1502,

404.1527(c)(2), 416.902, 416.927(c)(2); *Crawford*, 363 F.3d at 1160; *see also Denomme v. Comm'r*, 518 F. App'x 875, 877 (11th Cir. 2013) (holding that the ALJ does not have to defer to the opinion of doctor who conducted a single examination and who was not a treating doctor). A treating physician's opinion, on the other hand, is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford,* 363 F.3d at 1159 (quoting *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997) (internal quotations omitted). "Good cause" exists for an ALJ not to give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-584 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record). However, an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418-19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, F.2d 1233, 1240 (11th Cir. 1983)).

The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's RFC, and the application of vocational factors

"are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's RFC. *See, e.g.,* 20 C.F.R. § 404.1546(c).

## B.     Summary of the Medical Opinions in the Record

### 1.     *Opinions Prior to Plaintiff's Alleged Onset Date*

Mr. Edwards sustained an on-the-job back injury while trying to carry a 55-pound grain bag in July 2012. (Tr. at 52.) Dr. Joseph Rea examined Edwards first after his accident, noting that Edwards primarily complained of pain in his lower back that he described as "moderate." (Tr. at 447.) Dr. Rea noted in a follow-up visit that Edwards has "less back pain" but continued to have "occasional pain and numbness along the length of the right leg." (*Id*.) He also noted "pain on general motion at the waist. The range of motion at the waist is limited." (*Id*.) Dr. Rea recommended "an upgrade of the current work restrictions to a larger lifting limits (sic)." (*Id*.)

On August 1, 2012, Dr. Rea noted that Mr. Edwards did not have a change in symptoms and that he asked "specifically for something to help his pain beyond anti-inflammatory." (Tr. at 444.) On August 8, 2012, Dr. Rea noted, "Patient continues with the same back pain and, more importantly, right leg pain has not changed. We don't want a determined possible spinal involvement. Will arrange for lumbar spine MRI." On that date, the pain was "stabbing." (Tr. at 439.) An MRI dated August 20, 2012, revealed "degenerative changes along with specific disc bulging. Patient continues with high-grade sciatica on the right side." (Tr. at 428, 438.)

Dr. Rea referred Mr. Edwards to Dr. Cyrus Ghavam for chronic back, leg, and hip pain. An MRI dated September 19, 2012, revealed stenosis at L3-L4 largely due to "a developmentally narrow canal" as well as disk degeneration at L1-L2 and facet arthrosis at L4-L5 and L5-S1. (Tr. at 300.)

Mr. Edwards had his first back surgery in February 2013. Initially, his pain was manageable, and he returned to work at the same job in June 2013. (Tr. at 41.) After returning to work, where he was regularly tasked with heavy lifting, Mr. Edwards began to experience worsening symptoms. (*Id.*)

Mr. Edwards began seeing Dr. Craig Lincoln in 2013 after a referral by Dr. Ghavam. Dr. Lincoln noted chronic, severe back and leg pain in addition to numbness in the back, leg, and thigh. (Tr. at 282.) Dr. Lincoln noted that attempts

to relieve the pain had been unsuccessful, stating that "nothing has made it appreciably better." (*Id.*) Dr. Lincoln classified the back pain as "stabbing" and "constant." (*Id.*) He believed that Mr. Edwards was exhibiting behavior consistent with severe pain. (Tr. at 280.) He opined that Mr. Edwards was "very reluctant to move about the room" (Tr. at 283.) Dr. Lincoln also noted that it was his personal belief that Mr. Edwards was hurting, even though his prior surgery had been successful. (*Id.*) He believed that Mr. Edwards had "neuropathic pain in his leg." (*Id.*)

### 2.    *Treating Orthopedic Surgeon Dr. Curt Freudenberger*

Dr. Freudenberger, an orthopedic surgeon, first evaluated Mr. Edwards in 2014, diagnosing him with constant low back and leg pain; lumbar spondylosis; and lumbar radiculopathy. (Tr. at 607.) An MRI dated March 24, 2014, revealed "degenerative changes of facet athropathy in the lower lumbar region. (Tr. at 608–09.) A second back surgery, an L4-L5 microdiscectomy, was performed on April 8, 2014—Plaintiff's alleged onset date—and confirmed a post-operative diagnosis of "right L4–L5 recess stenosis with associated L5 nerve root radiculopathy." (Tr. at 612.) On July 16, 2014, Dr. Freudenberger noted "increased low back pain radiating to bilateral gluteal areas with perhaps some numbness that waxes and wanes in the groin area" and "subjective described numbness in the perineal area." A subsequent

MRI conducted on July 19, 2014 revealed "very prominent facet arthropathy . . . noted throughout." (Tr. at 619). On July 21, 2014, Dr. Freudenberger found "low back pain radiating to the immediate bilateral gluteal area to the posterolateral thigh and calf, perhaps right greater than left." (Tr. at 621.) Also in July 2014, Plaintiff saw Dr. Rea again and he recommended that he limit himself to lifting, pushing, pulling, and/or carrying 20 pounds occasionally and avoid bending at the waist. (Tr. at 407-08, 412-13). Dr. Freudenberger then stated that Mr. Edwards had improved overall with the radiculopathy and that he could return to work, although he noted that Mr. Edwards was worried about losing his job due to the work restrictions opined by Dr. Rea. (Tr. at 453).

Six months later, on February 17, 2015, Dr. Freudenberger completed a Medical Source Opinion ("MSO") form in which he indicated that Mr. Edwards could: 1) stand for only 20 minutes at a time and a total of two hours of an eight-hour workday; 2) walk for only 15 minutes at a time and a total of two hours of an eight-hour workday; and 3) sit for only 30 to 45 minutes at a time and a total of two hours of an eight-hour workday. (Tr. at 604.) He also indicated that Mr. Edwards needs to lie down three to four hours per day for 30 to 60 minutes each time. (*Id.*) Dr. Freudenberger stated that Mr. Edwards could never: 1) push/pull with the right leg; 2) climb; 3) balance; 4) stoop; 5) kneel; 6) crouch; 7) crawl; 8) work in extremely

cold conditions; 9) be exposed to vibration; 10) work in close proximity to moving mechanical parts; or 11) work in high, exposed places. (*Id.*)

After the MSO completed in February 2015, Dr. Freudenberger continued to examine Mr. Edwards. In April 2015, he documented that Mr. Edwards was using a "cane for ambulation leaning slightly forward with any prolonged standing and ambulating. It impacts all activities of daily living. He is unable to maintain employment." (Tr. at 625.) He also opined that Mr. Edwards had "a tingling and ache in his legs" and that "deep tendon reflexes are diminished bilaterally." (*Id.*) In May 2015, Dr. Freudenberger found that Mr. Edwards "has known advanced stenosis L2 to L5 with associated neurogenic claudications," "ongoing weakness bilaterally consistent with neurogenic claudications," and "diminished deep tendon reflexes at 0 – ¼ in L4 and S1." (Tr. at 629.) On December 14, 2015, Dr. Freudenberger stated that Mr. Edwards' low back pain "has increased recently" and "will radiate to the bilateral lower extremities, typically the left greater than right . . . will extend along the posterior thigh and calf." (Tr. at 633.) He also noted that Mr. Edwards exhibited "guarded lumbar range of motion" and that he leaned "slightly forward when ambulating consistent with an L1 nerve root radiculopathy." (*Id.*) Dr. Freudenberger recommended an L5–S1 fusion surgery. (*Id.*) However, despite numerous attempts, the surgery could not be scheduled due to the refusal of both

Mr. Edwards's personal health insurance and Workers' Compensation. (Tr. at 45, 629, 633.)

The ALJ erroneously described Dr. Freudenberger as a "consultative examiner" rather than what he was: Plaintiff's treating orthopedic surgeon, and she gave his February 2015 MSO little weight because "the medical evidence does not support" it and because it was offered six months after he had last seen Mr. Edwards. (Tr. at 16-17.)

### 3. *One-Time Consultative Examiner Dr. Rajappa Ekambaram*

Dr. Ekambaram conducted a consultative examination on behalf of the Social Security Administration on May 27, 2015. During the exam, Plaintiff had normal movement of his extremities, normal reflexes, no muscle wasting, normal coordination, and normal sensation. (Tr. at 517). Dr. Ekambaram ultimately determined that Mr. Edwards: 1) had degenerative disc disease at L4-L5; 2) could not sit, stand, or walk for long periods of time; and 3) suffered from depression and anxiety. (Tr. at 517, 521.) Dr. Ekambaram also noted "sclerosis of acetabular cavity and narrowing of the join space" and "sclerosis of the head of the femur medially." (Tr. at 517.)

The ALJ gave Dr. Ekambaram's opinion little weight because it was "vague," failed to give a function-by-function assessment of Dr. Edwards' ability to work, and he "only examined [Mr. Edwards] one time." (Tr. at 17.)

### 4. *Treating Pain Management Specialist Dr. Norman McCoomer*

Dr. McCoomer, a pain-medicine specialist, treated Mr. Edwards from 2014 to December 2016, seeing him over 20 different times and treating him with numerous medications and injections for his back, leg, and hip pain, as well as physical therapy. (Tr. at 526–603). Dr. McCoomer diagnosed anxiety; depression; muscle spasms; pain syndrome; hip pain; and low back pain. (*Id.*) He noted under "Past Medical History" that Mr. Edwards' ability to perform daily activities and work was affected. Dr. McCoomer's personal examinations of Mr. Edwards consistently revealed the following: gait and stance abnormal; heel walking abnormal; toe walking abnormal; unable to walk heel to toe; cervical spine muscle spasm; cervical spine tenderness on palpation; and paracervical muscle tender on palpation. (*Id.*) During lumbar spine inspection/palpations, he diagnosed lumbosacral spine abnormal; no normal curvature; palpation of lumbosacral spine abnormal; lumbosacral spine tenderness on palpation of spinous process; tenderness on palpation of right sacroiliac joint; tenderness on palpation of left sacroiliac joint; tenderness on palpation of left buttock; and tenderness on palpation of right buttock. (*Id.*) During lumbar spine

motor exams, he noted muscle bulk abnormal and lumbosacral strength abnormal. (*Id.*) During lumbar spine neuro exams, he noted decreased response to tactile stimulation of lower (L3) thigh; decreased response to tactile stimulation on knee and medial leg (L4); decreased response to tactile stimulation on lateral leg and dorsum of foot (L5); decreased response to tactile stimulation on sole of foot and on posterior leg (S1); compression test positive at right sacroiliac joint; compression test positive at left sacroiliac joint; and sitting root test of left leg positive. (*Id.*)

While the ALJ cited to the exhibits containing Dr. McCoomer's treatment notes on several occasions, she never discussed Dr. McCoomer's notes and findings.

### 5. *Non-Examining State Agency Medical Expert Dr. Marcus Whitman*

On June 4, 2015, Dr. Whitman, a state-agency consultant, reviewed Plaintiff's medical records and completed an RFC Assessment. (Tr. at 76-77.) Dr. Whitman opined that Mr. Edwards could perform light work with exertional limitations as follows: he could 1) occasionally lift/carry up to twenty (20) pounds; 2) frequently lift/carry up to ten pounds; 3) stand/walk with normal breaks for a total of approximately six hours in an eight-hour workday; 4) sit with normal breaks for approximately six hours in an eight-hour workday; and 5) push/pull without limitation. (Tr. at 76–77.) Dr. Whitman also noted that Mr. Edwards had postural

limitations, stating that Mr. Edwards could: 1) occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; 3) occasionally balance; 4) occasionally stoop or bend; 5) occasionally kneel or crouch; and 6) occasionally crawl. He stated that Mr. Edwards should avoid concentrated exposure to: 1) extreme cold; 2) extreme heat; 3) wetness; 4) humidity; 5) and vibration. (*Id.*)

The ALJ gave Dr. Whitman's assessment great weight because "[t]he medical evidence supports" it. (Tr. at 17.)

### C.    Analysis

With regard to Mr. Edwards's physical impairments,[1] the only medical opinion to which the ALJ assigned great weight was that of Dr. Whitman, the State agency medical expert who never personally examined Mr. Edwards and whose opinion did not, because it could not, take into account Plaintiff's arguably worsening condition after June 2015. The ALJ discounted the opinions of all of the treating and examining physicians and never discussed the weight she was giving, if any, to Dr. McCoomer's treatment notes that spanned three years of pain treatment.

Dr. Whitman completed his review of the medical records and assessment in June 2015, but Dr. Freudenberger treated Mr. Edwards until December 2015, and Dr. McCoomer treated him until December 2016. This is important because Mr.

---

[1]      Mr. Edwards makes no argument regarding the ALJ's handling of his mental impairments.

Edwards's condition appears to have worsened in the latter part of 2015, when Dr. Freudenberg suggested another back surgery. (Tr. at 604–37). Therefore, Dr. Whitman did not have the complete medical record leading up to the ALJ's decision on May 10, 2017. State agency consultants are considered experts in issues surrounding Social Security applicants and if supported by the record, their opinions can be given great weight by the ALJ. *See* 20 C.F.R. §§ 404.1512(b)(8), 404.1527(e)(2)(i), (ii); Social Security Ruling ("SSR") 96-6p, 1996 WL 374180 (S.S.A.). However, this rule is qualified. As SSR 96-6P provides, granting greater weight to the opinion of a state agency consultant is appropriate only when he or she bases it on the complete case record:

> In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources. For example, the opinion of a State agency medical or psychological consultant or other program physician or psychologist may be entitled to greater weight than a treating source's medical opinion if the State agency medical or psychological consultant's opinion is *based on a review of a complete case record* that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source.

SSR 96-6p, 1996 WL 374180 (emphasis added). The Court acknowledges that while Dr. Whitman may not have seen the entire record, the ALJ presumably did. *See Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 807 (11th Cir. 2013) ("Moreover,

even if the non-examining doctor was unable to review all of [claimant's] medical records before making her RFC determination, she cited several portions of the record in support of her conclusions, and the ALJ, who made the ultimate determination, had access to the entire record as well as Cooper's testimony."). But here, the ALJ credited Dr. Whitman's opinion as to Plaintiff's physical ailments over all other treating and examining physicians' opinions in the record, and she never mentioned the fact that Dr. Freudenberger recommended a third surgery in December 2015. In fact, since Dr. Whitman did not address any evidence past June 2015, there was no *medical* opinion that contradicted Dr. Freudenberger's findings in late 2015 that Mr. Edwards's condition had worsened to the point of needing another surgery. Yet the ALJ discounted Dr. Freudenberger anyway. On this record, remand is warranted for the ALJ to reevaluate Dr. Whitman's opinion in light of all of the evidence.[2] *See Vinson v. Berryhill*, 7:17-cv-00769-RDP, 2018 WL 3869557, at *6 (N.D. Ala. Aug. 15, 2018) (finding reversible error in the ALJ's giving significant weight to the opinion of the non-examining medical expert because her "physical assessment was completed in November 2013, and therefore did not include just under two years of the additional medical records added to the evidentiary record").

---

[2]    It also appears incongruous that the ALJ discredited Dr. Ekambaram's opinion because he "only examined the claimant one time" (tr. at 17), while giving the greatest weight to the opinion of the physician who never examined Plaintiff.

As noted, on remand, the ALJ should reassess the opinions of the other physicians as well. Regarding Dr. Freudenberger, the Commissioner argues that the ALJ's misstatement that he was a consultative examiner rather than Plaintiff's treating orthopedic surgeon was a mere "scrivener's error" and that any error was harmless because the ALJ continued to discuss Dr. Freudenberger's treatment records. The Court does not agree. Considering that a treating physician's opinion is entitled to more deference than a one-time examiner's, *see, e.g., Phillips*, 357 F.3d at 1241, the Court is left wondering whether the ALJ's decision would be different had she properly applied the "good cause" standard to Dr. Freudenberger's February 2015 MSO. *See id.*[3] Indeed, the ALJ's analysis of Dr. Freudenberger's MSO is also suspect because the "providers" cited by the ALJ in attempting to show that the medical evidence did not support the limitations opined by Dr. Freudenberger are Dr. McCoomer, Dr. Ekambaram, Dr. Rea, and Dr. Freudenberger himself, all of whose opinions were also granted either little weight or not weighed at all by the ALJ. (*See* tr. at 17-18 (citing to Exhibits 6F (Dr. Rea's treatment notes); 7F (Dr. Freudenberger's treatment notes); 9F (Dr. McCoomer's treatment notes); 10F (Dr. Ekambaram's assessment); and 14F (Dr.

---

[3] This case is not like *Loveless v. Comm'r of Soc. Sec.*, 678 F. App'x 866, 869 (11th Cir. 2017), where the ALJ's incorrect determination that a treating physician did not have a treating relationship with the plaintiff was held harmless because the ALJ gave "additional reasons establishing good cause to discount" the opinion.

Freudenberger's treatment notes) in support of statement that medical evidence did not support the limitations opined by Dr. Freudenberger). It is also dubious that the ALJ used the exact same evidence—restating it word for word—to conclude that Dr. Whitman's opinion *was* supported by the medical evidence. (Tr. at 16-17.) The ALJ should reevaluate Dr. Freudenberger's opinion using the "good cause" standard considering all of the evidence in the record.

Regarding Dr. McCoomer, the Commissioner argues that the ALJ was not required to articulate the weight she was giving, if any, to Dr. McCoomer's treatment notes because the ALJ is not required to refer to every piece of evidence in the record, *see Dyer*, 395 F.3d at 1211, and his treatment notes do not constitute a "medical opinion." A medical opinion is defined as a statement from an acceptable medical source that "reflect[s] judgments about the nature and severity of [a claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). But in *Winschel*, the Eleventh Circuit held that a physician's treatment notes can qualify as a medical opinion under this definition:

> The Commissioner argues that the ALJ was not required to consider the treating physician's treatment notes because they did not constitute a "medical opinion," but this argument ignores the language of the regulations. The treating physician's treatment notes included a description of Winschel's symptoms, a diagnosis, and a judgment about the severity of his impairments, and clearly constituted a "statement[]

from [a] physician . . . that reflect[s] judgments about the nature and severity of [Winschel's] impairment(s), including [Winschel's] symptoms, diagnosis and prognosis, what [Winschel] can still do despite impairment(s), and [Winschel's] physical or mental restrictions.

631 F.3d at 1179. Dr. McCoomer's treatment notes document 20 visits over the course of three years and discussed Plaintiff's treatment history, subjective complaints, clinical findings, observations, and diagnoses. He also noted changes in Mr. Edwards's activities of daily living and the negative effect Mr. Edwards's impairments had on his ability to work. While he did not provide a "formal" opinion giving a function-by-function assessment of Plaintiff's ability to perform in a work setting, his records document his extensive involvement with Mr. Edwards's ongoing care, and his physical examination findings are entirely consistent with those of Dr. Freudenberger and Dr. Rea. Yet the ALJ did not discuss Dr. McCoomer's findings at all. *But see Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 808 (11th Cir. 2013) ("An ALJ is not required to refer specifically to each piece of evidence in the record, but must sufficiently explain the weight given to 'obviously probative exhibits.'") (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). On remand, the ALJ should do so. *See Winschel*, 631 F.3d at 1179 ("It is possible that the ALJ considered and rejected these two medical opinions, but without clearly

articulated grounds for such a rejection, we cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence.").[4]

In sum, on this record, it was error for the ALJ to give great weight to the Dr. Whitman's opinion. On remand, the ALJ should reassess all of the medical opinions in the record.[5]

## IV.   Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and briefs of the parties, the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability and DIB is REVERSED and REMANDED for further administrative proceedings consistent with this opinion. A separate closing order will be entered.

---

[4]   This case is unlike *Colon v. Colvin*, 660 F. App'x 867, 870 (11th Cir. 2016), in which the Eleventh Circuit held that there was no reversible error in the ALJ's failure to state the weight given to a treating physician's findings and in not mentioning findings of other doctors because their opinions were consistent with the ALJ's findings and the ALJ's discussion did not leave the court wondering how the ALJ came to his decision. Because Dr. McCoomer noted an inability to complete activities of daily living and working, the Court is left wondering how the ALJ viewed these findings.

[5]   The ALJ's error, discussed above, is dispositive of this case. Therefore, it is unnecessary to address Plaintiff's other argument that the ALJ erred in finding him not entirely credible. *See Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand the ALJ must reassess the entire record).

**DONE** AND **ORDERED** ON SEPTEMBER 25, 2019.

_____

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704